NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID WHITAKER,

    Plaintiff,

    v.

JANE MASON,

    Defendant and Third-Party Plaintiff,

    v.

JOSEPH J. BALLIRO, JR., ESQ.,

    Third Party Defendant and Counterclaimant,

    v.

JANE MASON and THOMAS DENOIA,

    Counterclaim Defendants.

Civil Action No. 25-1232 (RK) (JBD)

**OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Motions to Dismiss the counterclaims asserted in *pro se* Third Party Defendant Joseph J. Balliro, Jr.'s ("Balliro") Answer and Counterclaims (ECF No. 6, the "Counterclaims"), filed by Counterclaim Defendant Jane Mason ("Mason") (ECF Nos. 22, 22-1, "Mason MTD") and Third-Party Defendant Thomas DeNoia ("DeNoia") (ECF Nos. 26, 26-7, "DeNoia MTD"). Balliro opposed each Motion. (ECF No. 25, "Mason Opp."; ECF No. 28, "DeNoia Opp.") DeNoia replied (ECF No. 29, "DeNoia Rep."), but Mason did not. The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the

reasons set forth below, the Motions to Dismiss are **GRANTED**, and Balliro's Counterclaims are **DISMISSED**.

I.  **BACKGROUND**

This case, which was removed from state court and now includes claims, counterclaims, third-party claims, and third-party counterclaims, centers on a series of unsuccessful businesses and an attorney who represented the businesses and business owners along the way. Despite the convoluted claims and procedural history, this Opinion concerns only two pending Motions to Dismiss Counterclaims filed by the Third-Party Defendant. As such, the Court summarizes only the background necessary to provide context.

A.  *WHITAKER V. MASON* (ORIGINAL COMPLAINT)

This action began on January 22, 2024 when Plaintiff David Whitaker ("Whitaker") filed a two-count complaint in New Jersey Superior Court for shareholder oppression and breach of fiduciary duty. (*See* ECF No. 5.) In his initial complaint, brought against Defendant Jane Mason, Whitaker alleged that he and Mason equally owned a company called Secure Investigations, Inc. ("Secure"). (*Id.* ¶¶ 1–2.) As CEO, Mason allegedly "failed in her corporate responsibilities," including failing to file taxes, pay bills, respond to litigation and debt collection attempts, and complete authorized company actions. (*Id.* ¶¶ 3–4.) Whitaker, who was an officer and director of Secure, alleged that he was "frozen out" of the management of the company and was prohibited from viewing Secure's books and records, participating in corporate decisions, and discussing the future of the company. (*Id.* ¶¶ 22–25.) Additionally, Whitaker alleged that Secure wholly owned one subsidiary called Boston Pro, Inc. ("Boston Pro"), which was involved in two lawsuits. (*Id.* ¶¶ 28–29.) According to Whitaker, Secure and Boston Pro were both represented by the same attorney, Joseph Balliro, Jr., who allegedly withdrew his representation of Boston Pro because

2

Mason refused to give him any direction. (*Id.* ¶ 30.) Whitaker also alleged that Mason's "behavior became increasingly unpredictable, irrational, and harmful to Secure," including using Secure's funds without authorization, failing to pursue business opportunities on behalf of Secure, failing to respond to emails, and other "unethical and increasingly alarming conduct." (*See id.* at 32–38.)

### B. *MASON V. WHITAKER* (COUNTERCLAIMS)

On February 29, 2024, Mason, represented by Thomas DeNoia, answered Whitaker's complaint. (*See* ECF No. 5-15.) Mason later filed counterclaims against Whitaker for *inter alia*, Fraud, Breach of Fiduciary Duty, Unjust Enrichment, Breach of Contract, Tortious Interference with a Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Minority Owner Oppression. (*See* ECF No. 5-14.) Mason amended her counterclaims on June 12, 2024. (ECF No. 5-16.)

### C. *MASON V. BALLIRO* (THIRD-PARTY COMPLAINT)

On October 17, 2024, still in New Jersey Superior Court, Mason sought leave to file a Third-Party Complaint against Balliro, asserting that Balliro "represented both [Whitaker] and [Mason], as counsel for Secure and Boston Pro" and that he "bears responsibility for legal malpractice, civil conspiracy, and fraud due to his involvement with [Whitaker]'s allegations." (ECF No. 5-17 ¶¶ 3–4.) Mason's Third-Party Complaint, filed on November 13, 2024, asserted three causes of action against Balliro: (1) Legal Malpractice; (2) Civil Conspiracy; and (3) Fraud. (ECF No. 5-1 at 4–5.) Mason alleged that because Balliro drafted various corporate documents related to both Secure and Boston Pro, she believed that Balliro "was a joint attorney for herself and Whitaker." (*Id.* ¶¶ 7, 10.) "Unbeknownst to Mason," however, "Balliro was acting in furtherance of Whitaker's interests [and] against those of the companies and Mason." (*Id.* ¶ 11.) In particular, Mason alleged that Balliro advised Mason to take out debt on behalf of the companies

3

and personally guarantee it, funded his own projects using company funds, accumulated large debts against Secure and Mason, failed to properly prepare and file legal documents, negotiated settlements without Mason's consent, and refused to disclose certain company information to Mason. (*See id.* ¶¶ 15, 17, 19, 20, 22, 25.)

### D. *BALLIRO V. MASON AND DENOIA* (THIRD-PARTY COUNTERCLAIMS)

On February 13, 2025, Balliro, proceeding *pro se*, removed the case to federal court, invoking this Court's subject matter jurisdiction under 28 U.S.C. § 1332. (*See* ECF No. 1.) Balliro then answered Mason's Third-Party Complaint and filed counterclaims of his own against Mason and her attorney, DeNoia (who had been representing Mason throughout the subject lawsuit but had not yet been made party to the suit himself). (ECF No. 6.)[1] Those counterclaims are the subject of the present Motions to Dismiss.

In his pleading, styled as "Counterclaims" (*see* ECF No. 6 at 6), which reads more like a repudiation of Mason's Third-Party Complaint and less like a standalone pleading, Balliro alleges that he acted as general counsel for Secure and Boston Pro and created records and memoranda regarding the ownership and corporate structure of the companies, but he never represented either Whitaker or Mason in their personal capacities. (*Id.* at 5 ¶¶ 4, 8, 10, 11.) Balliro takes issue with a variety of Mason's contentions in her own Third-Party Complaint, asserting that any allegation that he advised or compelled Mason to execute personal guarantees "is ridiculous and counter to any advice attorney Balliro would give to any officer or director of any company and constitutes egregious and offensive defamation" and that Mason's allegation that Balliro took money from her is also "a lie and constitutes egregious and offensive defamation." (*Id.* at 6 ¶¶ 14–15.) Balliro

---

[1] As the Court explicates further below, Balliro cannot properly bring "counterclaims" against DeNoia; his pleading should more likely be interpreted as counterclaims against Mason and Third-Party claims against DeNoia. Nonetheless, since the claims are largely overlapping between the two parties, the Court refers to the pleading at ECF No. 6 as Balliro's "Counterclaims" for clarity and concision.

further alleges that Mason was in the throes of "antagonistic divorce litigation" with her "estranged husband." (*Id.* at 7 ¶¶ 16.) Balliro asserts that he is owed $145,500 in unpaid legal fees, and that Mason promised to either authorize payment from Secure or pay the fee herself, which she never did. (*Id.* at 8 ¶¶ 21–24.)[2] Mason also allegedly improperly disclosed confidential company information to her attorney, DeNoia, as part of her divorce proceedings. (*See id.* at 9 ¶¶ 31–34.) As for DeNoia, Balliro asserts that DeNoia was Mason's personal attorney and "knows" that Balliro did not represent Mason and did not otherwise act in the ways that Mason alleged. (*See id.* at 12 ¶¶ 56–64.)

Balliro brings four causes of action: (1) Legal Malpractice; (2) Defamation; (3) Conspiracy; and (4) Abuse of Process. (*Id.* at 13–16.) He seeks damages, dismissal of Mason's Third-Party Complaint, and injunctive relief prohibiting this case from proceeding to discovery. (*Id.* at 16.) Mason and DeNoia each separately moved to dismiss the counterclaims (ECF Nos. 22, 26), Balliro opposed each Motion (ECF Nos. 25, 27); and DeNoia replied (ECF No. 29).[3] The Motions are now ripe for review.

## II.    **LEGAL STANDARD**

For a complaint to survive dismissal under Fed. R. Civ. P. ("Rule") 12(b)(6) of the Federal Rules of Civil Procedure, it must contain "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022). A claim

---

[2] Notably, Balliro has not brought any breach of contract claim to recover the allegedly unpaid fee.

[3] Balliro also filed a motion to disqualify DeNoia as Mason's counsel in this matter on the basis that DeNoia has a conflict of interest because he both represents Mason and is a named counterclaim defendant. (*See* ECF No. 9.) On May 27, 2025, the Hon. J. Brendan Day, U.S.M.J. administratively terminated the motion to disqualify pending this Court's resolution of the motions to dismiss. (ECF No. 30.) The Court takes no position on the terminated motion.

is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). The court accepts all allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although courts typically hold a *pro se* plaintiff's complaint to "less stringent standards," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a *pro se* plaintiff who is also an attorney with "substantial legal training" is not afforded the typical leniency. *See, e.g.*, *Khawam v. Allen*, No. 23-22465, 2025 WL 654107, at *6 (D.N.J. Feb. 27, 2025); *Turner v. N.J. State Police*, No. 08-5163, 2017 WL 1190917, at *7 (D.N.J. Mar. 29, 2017) ("Attorney *pro se* litigants are not accorded the same consideration as *pro se* litigants who lack substantial legal training"); *Kenny v. United States*, No. 08-3921, 2009 WL 276511, at *8 (D.N.J. Feb. 5, 2009) ("[T]his pro se Plaintiff is an attorney, and therefore, has substantial legal training and professional experience, undermining the rationale set forth by the Supreme Court in [*Haines*].").

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

6

## III. DISCUSSION

Notwithstanding this matter's labyrinthine procedural history, the Court is confronted at this juncture with a straightforward motion to dismiss Balliro's counterclaims against Defendant/Third-Party Plaintiff/Counterclaim Defendant Mason, and her attorney, Third-Party Defendant DeNoia. Balliro brings four causes of action: (1) Legal Malpractice; (2) Defamation; (3) Conspiracy; and (4) Abuse of Process. (Compl. at 13–15.)[4]

Before proceeding to the merits of each count, the Court cannot ignore the plethora of procedural deficiencies in which Balliro's removal and pleading are tangled. *First*, the federal removal statute does not authorize Balliro, as a Third-Party Defendant, to remove this case to federal court. *See Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 444 (2019) ("[W]e hold that a third-party counterclaim defendant is not a 'defendant' who can remove under [28 U.S.C.] § 144(a)"); *Patient Care, Inc. v. Freeman*, 755 F. Supp. 644. 646 (D.N.J. 1991) ("It is [] generally accepted that the majority view holds that third-party defendants may not remove a case to federal court."). Nonetheless, Balliro's removal ploy is saved by the fact that this deficiency is non-jurisdictional, and therefore the Court may not remand this matter *sua sponte*; instead, the parties would have needed to file a motion to remand within 30 days of the removal, which they did not do. *See Roxbury Condo. Ass'n, Inc. v. Anthony S. Cupo Agency*, 316 F.3d 224, 227–28 (3d Cir. 2003) (finding that a district court does "not have the power to remand for a procedural defect," including the removal of a third-party claim, "once the 30-day statutory period lapsed").

In addition, Balliro's pleading, styled as "counterclaims," improperly asserts claims against DeNoia—an individual who cannot be the subject of any counterclaim because he was not already

---

[4] All parties agree that New Jersey law governs each of these claims. (*See, e.g.*, Mason MTD at 4; DeNoia MTD at 6; Mason Opp. at 7.)

7

party to this lawsuit. *See* Fed. R. Civ. P. 13(a) (allowing counterclaims against an "opposing party"); *Huk v. NJ Ale House, LLC*, No. 23-568, 2025 WL 1334616, at *1 (D.N.J. May 7, 2025) ("Rule 13(h) only allows a defendant to bring a non-party into a lawsuit as an added defendant to counterclaims when there are counterclaims asserted against the original plaintiffs. . . None of these rules apply when the purported 'counterclaims' do not assert any claims against the original plaintiffs."). If anything, Balliro would more properly bring counterclaims against Mason alone, and third-party claims against DeNoia, pursuant to Rule 14. *See* Fed. R. Civ. P. 14(a)(5) (allowing a third-party defendant to bring claims against a non-party). What's more, in order to join DeNoia as a third-party, Balliro needed to serve DeNoia with process, which, by his own admission, he never did. *See* Fed. R. Civ. P. 14(a); (DeNoia Opp. at 8.)

In a section titled "Prayers for Relief," Balliro asks this Court to grant "injunctive relief prohibiting the abusive pursuit of discovery prior to this Court [*sic*] opportunity to evaluate the legitimacy of the claims" and requests "[t]hat this Court dismiss the third party [*sic*] claims and complaint[.]" (*See* Counterclaim at 16.) If Balliro wanted to dismiss Mason's Third-Party Complaint against him and prevent those claims from proceeding to discovery, he needed to file a routine motion to dismiss, pursuant to Federal Rule 12. *See* Fed. R. Civ. P. 12(b); *see also Top v. Ocean Petroleum, LLC*, No. 10-1042, 2010 WL 3087385, at *3 (D.N.J. Aug. 3, 2010) ("A Rule 12(b)(6) motion essentially represents a checkpoint that must be cleared before a plaintiff can reach the discovery stage of litigation." (citing *Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010))). Instead, Balliro answered the Third-Party Complaint, which means that Mason's claims against him will now move to discovery. *See, e.g., Dawson v. Frias*, No. 09-6050, 2010 WL 1076251, at *1 ("Discovery is properly conducted after an answer has been filed . . . ." (quotation omitted)).[5]

---

[5] To be clear, the Court takes no position as to whether the claims against Balliro have any merit. Clearly, Balliro has found himself involuntarily entangled in litigation between estranged business partners

Balliro's allegations are especially ill-conceived as leveled against a retained lawyer solely relating to his legal representation of a client. Indeed, the Court expects more from a licensed attorney, like Balliro.[6] *See, e.g., Kenny*, 2009 WL 276511, at *8.

Each of Balliro's four claims suffers from basic defects. The Court addresses each *ad seriatim*.

### A. LEGAL MALPRACTICE (COUNT I)

Balliro asserts that DeNoia[7] owes a variety of duties to the Court, as prescribed by Rules 3.3 and 3.4 of the American Bar Association's Rules of Professional Conduct. (*See* Compl. at 13 ¶¶ 66–68.) According to Balliro, DeNoia breached these duties by filing Mason's Third-Party Complaint and "knowingly misrepresenting the facts, making wild unsubstantiated allegations of facts, making false allegations, by making frivolous claims, by making untruthful claims, and by engaging in abusive conduct, harassment, and defamation designed to extract an unjustified payment to him and to his client." (*Id.* ¶ 70.) Therefore, Balliro argues, DeNoia committed legal malpractice.

---

volleying legal claims at one another; he did not commence this action and did not choose New Jersey as its forum.

[6] To be sure, if bona fide and in good faith, Balliro is free to refer DeNoia to the Office of Attorney Ethics if there are legitimate grounds to believe DeNoia violated the Rules of Professional Conduct ("RPCs"), *see Baxt v. Liloia*, 714 A.2d 271, 282 (N.J. 1998) (explaining that an attorney "should have reported the violations alleged herein to the Office of Attorney Ethics ('OAE')" rather than litigate), or to seek sanctions under the applicable Rules of Civil Procedure. To date, the Court has seen nothing to justify either, but takes no formal position regarding same.

[7] In her Motion to Dismiss, Mason argues that any claim against her for legal malpractice fails because she is not an attorney, let alone Balliro's attorney. (*See* Mason MTD at 4–5.) Balliro, in his opposition, asserts that he "did not claim . . . that [Mason] is culpable of legal malpractice." (Mason Opp. at 5.) The Complaint itself confusingly does not specify whether the legal malpractice claim is brought only against DeNoia or against both Mason and DeNoia. (*See* Compl. at 13.) Nonetheless, it is clear to the Court, especially given Balliro's averment in his opposition, that no claim for legal malpractice can be stated as against Mason. *See Murray v. City of Philadelphia*, 901 F.3d 169, 171 (3d Cir. 2018) ("Only attorneys may be sued for legal malpractice; a represented party could not seek recourse against a non-attorney for even the most egregious conduct.").

9

A plaintiff in New Jersey must allege the following elements to state a claim for legal malpractice: "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) that the attorney breached the duty owed; (3) that the breach was the proximate cause of any damages sustained; and (4) that actual damages were incurred." *Wealth v. Fox Rothschild LLP*, No. 23-3194, 2024 WL 3371354, at *6 (D.N.J. July 11, 2024) (citing *McGrogan v. Till*, 771 A.2d 1187, 1193 (N.J. 2001) and *Sommers v. McKinney*, 670 A.2d 99, 103–04 (N.J. Super. Ct. App. Div. 1996)).

Balliro's claim fails at the first element because he does not allege the existence of an attorney–client relationship between himself and DeNoia. *See McGrogan*, 771 A.2d at 1193. Instead, as is evident throughout the counterclaims, DeNoia represents Balliro's adversary, Mason. (*See, e.g.*, Compl. at 12 ¶ 56.) New Jersey courts "are reluctant to permit a non-client to sue his adversary's attorney." *Jonas v. Gold*, No. 13-2949, 2014 WL 4854484, at *9 (D.N.J. Sept. 30, 2014) (citing *LoBiondo v. Schwartz*, 970 A.2d 1007, 1029 (N.J. 2009)), *aff'd* 627 F. App'x 134 (3d Cir. 2015).

There are rare circumstances in which an attorney may owe a duty to a non-client, such as when a "lawyer intended or should have foreseen that the third party would rely on the lawyer's work," but Balliro has not alleged any instances of such a reliance. *See Petrillo v. Bachenberg*, 655 A.2d 1354, 1359 (N.J. 1995); *see also Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 265 (N.J. 2005) ("[I]f the attorney does absolutely nothing to induce reasonable reliance by a third party, there is no relationship."). Instead, Balliro merely alleges that he was harmed by the Third-Party Complaint that DeNoia filed on Mason's behalf, which he claims is "fraud." (Compl. ¶ 69.) In fact, Balliro does not allege that DeNoia ever communicated anything to him, other than being "included in many email communications generated to Jane Mason." (Compl. at 10 ¶ 42.) These

10

allegations do not demonstrate that Balliro ever relied on any representation made by DeNoia, or that Balliro and DeNoia had any ongoing attorney–client relationship. The Court notes that Balliro failed to append or reference in any manner any purported retainer agreement evidencing an attorney–client relationship between himself and DeNoia.

Balliro's allegations fail to meet the first element of a legal malpractice claim, and he also lacks standing to bring these claims because DeNoia was never his lawyer. *See Smith v. Lynn*, No. 18-1415, 2019 WL 2140856, at *5 (D. Del. June 7, 2019) (citing *McDonald v. Coyle*, 175 F. App'x 947, 949 (10th Cir. 2006)). The only party who could conceivably have standing to bring a legal malpractice claim against DeNoia is Mason—the individual who employed him and entered into an attorney–client relationship with him. Although not raised by any party, this lack of standing presents jurisdictional issues for the Court, because "[a]bsent Article III standing, a federal court does not have subject matter jurisdiction to address a [party]'s claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

Balliro also argues, based on the Rules of Professional Conduct, that DeNoia "has a duty that extends to other attorneys he deals with and to the Court." This contention is unsubstantiated. Indeed, the New Jersey Supreme Court has prohibited lawsuits "based solely on an allegation that the conduct of the[] defendants violated the Rules of Professional Conduct." *Baxt v. Liloia*, 714 A.2d 271, 272 (N.J. 1998) (quotation omitted); *see also Meisels v. Fox Rothschild LLP*, 222 A.3d 649, 657 (N.J. 2020). Accordingly, Balliro's legal malpractice claim fails.

### B. DEFAMATION (COUNT II)

Balliro's claim for defamation against both Mason and DeNoia also stems exclusively from the filing of Mason's Third-Party Complaint. Balliro alleges that Mason and DeNoia "published [] false and fraudulent statements of fact" and "acted with actual malice and/or negligence and/or

11

gross negligence." (Compl. at 14 ¶ 74.) Setting aside the impermissibly conclusory nature of these allegations, *see Wilson*, 57 F.4th at 140, Balliro's claim is barred because the allegations in Mason's Third-Party Complaint are protected by the litigation privilege.

"Attorneys have absolute privilege to 'publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.'" *Koch v. Pechota*, 744 F. App'x 105, 114 (3d Cir. 2018) (quoting Restatement (Second) of Torts § 586 (Am. Law Inst. 1977)). The scope of the litigation privilege is determined by state law. *Id.* New Jersey's litigation privilege applies to "communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Thomas v. Ford Motor Co.*, 137 F. Supp. 2d 575, 582 (D.N.J. 2001) (citing *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995)). New Jersey's litigation privilege "affords immunity from liability regardless of motive—so that even if a party acted out of malice his or her statements are protected." *Koch*, 774 F. App'x at 114. This privilege has been specifically recognized in the defamation context. *See Hawkins*, 661 A.2d at 289.

Here, even accepting as true that the Third-Party Complaint filed by DeNoia on Mason's behalf contained false allegations, the Third-Party Complaint is protected by the litigation privilege because it was: (1) made in the course of this judicial proceeding; (2) by Mason, a litigant, and DeNoia, her authorized representative; (3) to achieve the objects of the litigation; and (4) is connected to the initial claims brought by Whitaker against Mason. *See, e.g., Jacovetti Law P.C. v. Shelton*, No. 20-163, 2020 WL 1984883, at *2 (E.D. Pa. Apr. 27, 2020) (applying litigation privilege to defamation claim based on allegedly false statements made in a judicial complaint);

*see also Jaye v. Shipp*, No. 17-5257, 2018 WL 1535215, at \*6 (D.N.J. Mar. 29, 2018) (dismissing claims with prejudice because defendants were "shield[ed]" by the litigation privilege").

### C. CONSPIRACY (COUNT III)

Balliro's third cause of action is titled simply "conspiracy." (Compl. at 15.) Balliro alleges that Mason and DeNoia "entered into an agreement to unlawfully and without legal justification [assert a] claim [that] attorney Balliro committed fraud, conspiracy, [and] breaches of criminal code, among other false and [*sic*] claims." (Compl. at 15 ¶ 80.) He further asserts that Mason and DeNoia "committed an overt act in furtherance of their plan and scheme by filing the false and fraudulent claims with the New Jersey Superior Court." (*Id.* ¶ 81.)

Balliro's conspiracy claim suffers from a variety of insurmountable defects. Chief among them is that civil conspiracy is not an independently actionable cause of action. *See Farris v. Cnty. of Camden*, 61 F. Supp. 3d 307, 326 (D.N.J. 1999). To state a conspiracy claim, a plaintiff must assert an underlying tort that is connected to the conspiracy cause of action, but Balliro has not done so. *See id.*

Even if Balliro *had* alleged an underlying tort, a civil conspiracy claim also requires two or more people acting in concert. *See id.* at 311. However, the Third Circuit has held that two people "act[ing] within the attorney-client relationship [] cannot be considered conspirators." *Heffernan v. Hunter*, 189 F.3d 405, 407 (3d Cir. 1999). Here, the alleged conspiracy is borne out of DeNoia's role as Mason's attorney—Balliro asserts that the two parties conspired to file Mason's allegedly false Third-Party Complaint against him. (*See* Compl. at 15 ¶ 80.) Drafting and filing a pleading is prototypical of the attorney–client relationship and, as a matter of law, does not constitute a conspiracy. *See Heffernan*, 189 F.3d at 407. Accordingly, Balliro's conspiracy claim fails.

### D. ABUSE OF PROCESS (COUNT IV)

Balliro's final claim is for "abuse of process." (*See* Compl. at 15–16.) Balliro alleges that Mason and DeNoia "intentionally misused the legal process and procedure of the Courts for an ulterior motive": "to coerce a substantial monetary settlement from attorney Balliro's malpractice insurance knowing that their claims are false and fraudulent." (*Id.* at 16 ¶¶ 85–86.) To establish a claim for abuse of process, a plaintiff must show: (1) an ulterior motive, and (2) "some further act after an issuance of process representing the perversion of the legitimate use of process." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 644 (D.N.J. 2011). "A successful claim of malicious abuse of process . . . requires a defendant's improper, unwarranted and perverted use of process *after* it has been issued." *Id.* at 644–45 (quoting *Wozniak v. Pennella*, 862 A.2d 539, 549 (N.J. Super. Ct. App. Div. 2004)) (emphasis added).

Here, although Balliro theorizes that Mason only filed a Third-Party Complaint against him to "coerce a substantial monetary settlement," this is a legitimate reason for using the judicial system and is not an "ulterior motive." *See Holst v. Oxman*, No. 05-220, 2006 WL 724520, at *7 (E.D. Pa. Mar. 17, 2006) ("Filing a complaint in the hopes that it will induce settlement negotiations does not constitute an abuse of process."); *see also Penwag Property Co., Inc. v. Landau*, 372 A.2d 1162, 1165 (N.J. Super. Ct. App. Div. 1977) ("Coercive action or bad motives or intent prior or leading to the institution of the lawsuit do not suffice to expose a plaintiff to a cause of action for malicious abuse of process."). Additionally, the second element of abuse of process is not met because the purported filing of the Third-Party Complaint happened *before* the issuance of process—not after. *See Hoffman v. Asseenontv.com, Inc.*, 962 A.2d 532, 541 (N.J. Super. Ct. App. Div. 2009) ("The tort of malicious abuse of process lies not for commencing an improper action, but for misusing or misapplying process after it is issued."). Since neither of the

14

two elements is met, Balliro's claim for abuse of process cannot proceed.

Accordingly, since he has failed to state a claim for any of his asserted causes of action, Balliro's Counterclaims are **DISMISSED**.[8]

The Court cannot conceive of any facts that will permit Balliro's claims against Mason and DeNoia to proceed on the asserted causes of action set forth in Balliro's Counterclaims. However, Balliro has not yet had any opportunity to amend his pleading and the Court is mindful that "if a complaint is subject to a Rule (12)(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Should Balliro desire to file an amended pleading, he must file a motion for leave to amend in compliance with Local Civil Rule 15.1, explaining why any further amendment would not be futile. *See* Fed. R. Civ. P. 15(a)(2); *United States ex. rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).

---

[8] DeNoia also moves to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(5) because Balliro never served DeNoia with process, and, accordingly, this Court does not have personal jurisdiction over him. (DeNoia MTD at 3–5.) Balliro bears the burden of establishing that valid service was effectuated. *See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993). Here, Balliro has not established that he effectuated valid service, and instead requests that the Court provide him with an opportunity to do so. (*See* DeNoia Opp. at 8.) Having dismissed the Complaint pursuant to Rule 12(b)(6), the Court does not decide DeNoia's contentions under 12(b)(2) and 12(b)(5); Balliro should nonetheless serve DeNoia in compliance with Rule 4 should he be afforded an opportunity to his Complaint. *See Russomanno v. Sunovion Pharms., Inc.*, No. 22-5032, 2023 WL 2649453, at *2 (D.N.J. Mar. 27, 2023) ("Because the [c]ourt dismisses the [c]omplaint for failure to state a claim, it does not fully address the service issue. Plaintiff, however, should properly serve any amended complaint in accordance with Rule 4"), *aff'd* No. 23-1587, 2023 WL 6374191 (3d Cir. July 17, 2023).

## CONCLUSION

For the foregoing reasons, Mason's Motion to Dismiss (ECF No. 22) is **GRANTED** and DeNoia's Motion to Dismiss (ECF No. 26) is **GRANTED**. Balliro's Counterclaims are **DISMISSED**. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: July 17, 2025